921 A.2d 863

**Donald E. RANKIN**

v.

**STATE of Maryland.**

**No. 2872, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

April 30, 2007.

Juan P. Reyes (Nancy S. Forster, Public Defender, on brief), for appellant.

Robert Taylor, Jr. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel JAMES R. EYLER, SHARER, and WOODWARD, JJ.

WOODWARD, J.

This case comes to us as an appeal from an order of the Circuit Court of Charles County denying a Motion to Correct an Illegal Sentence. We shall affirm.

## PROCEDURAL HISTORY[1]

Donald Rankin, appellant, was charged in the Circuit Court for Charles County with first degree burglary, first degree sex offense, two counts of second degree sex offense, conspiracy to

---

1. Because appellant's question deals solely with his plea agreement, we need not discuss the facts of the offenses with which appellant was charged.

commit first degree burglary, and conspiracy to commit a second degree sex offense.

On June 21, 1999, appellant entered into a plea agreement with the State. The prosecutor explained that appellant would enter a plea to the count charging conspiracy to commit a second degree sex offense. The prosecutor proffered: "The only limitation on sentence is the Court had bound itself to an active cap of no more than three years."

The trial court told appellant:

Okay. I'm told that the agreement is if that plea is accepted that the State will dismiss all the other counts at the time of sentencing. In addition, the active portion of the sentence, that's the portion that's not suspended, cannot exceed three years. The Court could, however, as part of the sentence, impose the sentence where the suspended portion exceeds three years.

Appellant told the trial court that he understood. The trial court set a date for sentencing, and the court indicated it would ask that the presentence investigation report be received at least three days earlier.

At sentencing, on August 13, 1999, the prosecutor told the trial court that "[t]he victim has indicated to me that she wants absolutely no contact with the defendant whatsoever and I would ask that it be extended not only to the victim but the victim's family, her children and her parents." Defense counsel merely said, "Your Honor, I believe [appellant] wants to submit to the mercy of the Court." Asked if he wanted to say anything, appellant said,[2] "No, sir." The trial court then told appellant: "And I warn you that if you violate probation you will run the risk of doing substantially all of the back up time. Do you understand that?" Appellant stated that he did.

---

**2.** The transcript indicates that defense counsel responded to the trial court's inquiry, but the context suggests that it was appellant who answered the trial court.

The trial court imposed a sentence of twenty years, with all but three years suspended, followed by a period of five years probation. He then advised appellant of the terms of his probation and his appeal rights. Afterward, the prosecutor *nol prossed* the remaining counts. Defense counsel told the trial court: "Thank you, Your Honor. I [will] read his order for probation to him as we sit back at the chairs now, if I may."

The "Plea/Sentence Agreement" filed on June 21, 1999 provides: "Defendant will plead guilty to:" and, handwritten on the form is "Conspiracy to Commit 2° Sex Offense (Amended count # 7) (Alford plea)." [3] The form recites "State will dismiss other charges/cases as follows:", with everything after charges crossed out. It also states: "Court will," (then in handwriting,) "impose an active cap of no more than 3 years. Court may impose additional suspended time." On the next line is printed: "There is no other sentencing limitation except that provided by law." The agreement is signed by the prosecutor, appellant, appellant's trial counsel, and Judge Henderson, and dated "6/21/99."

Appellant was released from incarceration on January 28, 2000, and on February 22, 2001, the court was informed by the Department of Parole and Probation that appellant had committed a new offense. On January 8, 2003, appellant admitted violating probation and was sentenced to serve ten years of the suspended sentence to run consecutive to the new sentence imposed on the case forming the basis for appellant's violation of probation. On January 13, 2006, appellant filed a Motion to Correct an Illegal Sentence, claiming that the plea agreement did not include any term of probation. The trial court denied the motion on January 24, 2006, in a Memorandum and Order, stating that the agreement "made no comment about the length or terms of probation" and that the

---

**3.** In *North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970), the United States Supreme Court held that when there was a factual basis for a guilty plea, a State could permit an individual accused of a crime to enter a guilty plea without admitting his participation in the crime.

terms imposed "were within the limits provided for by statute." This appeal followed.

## DISCUSSION

### The Parties' Contentions

Appellant claims that the trial court erred in denying his motion. He argues, as he did below, that the plea agreement did not include a period of probation and that the trial court's adding the probation to his sentence rendered the sentence illegal. He asks that we strike the probation from his sentence.

The State responds that probation is implicit in every suspended sentence. It also asserts that, should we conclude that the plea agreement did not include probation, the proper remedy is to void the agreement in its entirety and to have appellant tried on the original charges.

### Plea Agreements

We review the question of whether a plea agreement has been violated de novo. *Tweedy v. State,* 380 Md. 475, 482, 845 A.2d 1215 (2004). In *Tweedy,* the Court of Appeals noted:

> "Plea agreements are an accepted procedure throughout the United States and are recognized as an important component of the criminal justice system."

*Id.* at 484, 845 A.2d 1215 (citing *Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) stating that plea bargaining "is an essential component of the administration of justice"). The Court noted the *Santobello* Court's holding that " 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " *Id.* at 484, 845 A.2d 1215, (quoting *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499).

"[T]he law is well settled that, in the absence of any jurisdictional defect, such agreements are based on contract principles and must be enforced." *Hillard v. State,* 141

Md.App. 199, 207, 784 A.2d 1134 (2001).[4] "[S]everal courts have noted that the terms of the plea agreement are to be construed according to what a defendant reasonably understood when the plea was entered." *Tweedy*, 380 Md. at 482, 845 A.2d 1215. In addition, "[t]he words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed." *Ridenour v. State*, 142 Md.App. 1, 6, 787 A.2d 815 (2001). We construe the agreement as a whole, to give effect to all parts of the contract. *Owens–Illinois, Inc. v. Cook*, 386 Md. 468, 497, 872 A.2d 969 (2005). In determining a defendant's reasonable understanding of the agreement at the time he entered into it, "we consider terms implied by the plea agreement as well as those expressly provided." *United States v. Bunner*, 134 F.3d 1000, 1003 (10th Cir.1998). *See also People v. Manzanares*, 85 P.3d 604, 608 (Colo.App.2003) (stating that "terms of a plea agreement may be implied as well as expressed plainly on the agreement's face.") (citation omitted), *cert. denied*, 2004 WL 500849 (Colo.2004); *State v. Brooke*, 134 Idaho 807, 10 P.3d 756 (2000).

### Suspended Sentence

Md.Code, Article 27 § 641A, effective at the time of appellant's sentencing, provided, in part: [5]

**Suspension of sentence or imposition of probation following judgment.**

(a) In general.—(3) The court may impose a sentence for a specified period and provide that a lesser period be served in confinement, suspend the remainder of the sentence and grant probation for a period longer than the sentence but not in excess of 5 years.

---

**4.** We recognize, of course, that plea bargains are not entirely subject to contract law because of public policy and constitutional considerations. *See Tweedy*, 380 Md. at 482, 845 A.2d 1215; *State v. Parker*, 334 Md. 576, 604–05, 640 A.2d 1104 (1994).

**5.** The current version of Article 27 § 641A (a)(3) is found in Md.Code (2001, 2006 Supp.), § 6–222(a) of the Criminal Procedure Article.

Thus the language of the statute indicates that, when a trial court suspends a sentence, it will impose probation as a matter of course. The connection between a suspended sentence and probation is also illustrated, albeit in a different context, in *Moats v. Scott*, 358 Md. 593, 751 A.2d 462 (2000). There, the Court of Appeals explained the options available to a sentencing judge, including imposing a "split sentence":

> A third option-one that is frequently used-is the "split sentence" provided for in § 641A(a)(3). That subsection allows a court to "impose a sentence for a specified period and provide that a lesser period be served in confinement, suspend the remainder of the sentence and grant probation for a period longer than the sentence but not in excess of 5 years."

*Id.* at 595, 751 A.2d 462; *see also Cathcart v. State*, 397 Md. 320, 327, 916 A.2d 1008 (2007)(stating that if a court imposes a split sentence, "there must be a period of probation attached to the suspended part of the sentence").

The significance of the probationary period is explained in *State v. Dopkowski*, 325 Md. 671, 602 A.2d 1185 (1992): "The trial court, upon its determination that a probationer has violated one or more conditions of probation, enjoys many options. 'These options vary from continuing the probation to reimposing the full remaining term of a suspended sentence.' " *Id.* at 678, 602 A.2d 1185 (quoting *Maus v. State*, 311 Md. 85, 107, 532 A.2d 1066 (1987)).

### Application To Plea Agreement

In the case *sub judice*, it is clear that a probationary period was implicit in the terms of the plea agreement. Although the prosecutor did not specifically discuss probation, he told the trial court that the only sentencing limitation in the agreement was that the "active cap," *i.e.*, the executed portion of the sentence, was three years. The written agreement recited that there could be additional suspended time and that there was "no other sentencing limitation except that provided by law." Thus the agreement gave the trial court the authori-

ty to suspend part of the sentence and impose probation, which it did.

Appellant cites *Laurie v. State*, 29 Md.App. 609, 349 A.2d 276 (1976), arguing that this Court found the imposition of the "implied suspended sentence" void. Appellant is incorrect. There was no "implied suspended sentence" in that case because, under the statute, the trial court may impose probation only if he or she suspends a part of the sentence. *Benedict v. State*, 377 Md. 1, 8, 831 A.2d 1060 (2003)(explaining that if the defendant violated probation, the court does not impose or reimpose a sentence, but "merely determines how much of the unserved part of the sentence the defendant must serve in prison."); Md.Code, Article 27, § 641A. As this Court explained in *Ridenour*, "a lesser suspended period of years is carved out of the total sentence and is not executed." *Ridenour*, 142 Md.App. at 7, 787 A.2d 815. In *Laurie*, there was no suspended or "unserved" portion of the sentence. 29 Md.App. at 612–13, 349 A.2d 276. In addition, the probationary portion of the sentence was unlawful because it was for an indefinite period. *Id.* at 614, 349 A.2d 276. Here, the transcript indicates that appellant's probation had a specific term, of which he was aware.

We also conclude that a reasonable person in appellant's position would interpret the plea agreement to include probation. During the sentencing hearing, appellant affirmed as much when the trial judge warned him that, if he violated probation, he would "run the risk of doing substantially all of the back up time." Appellant said that he understood. Neither appellant nor his counsel objected to the imposition of a probationary period or to any condition of probation. Indeed, at the end of the sentencing hearing, defense counsel said that he would read the order of probation to appellant.

Finally, because a period of probation must be attached to a suspended sentence, we hold that the right to impose a period of probation is included in any plea agreement that provides

for a suspended sentence.[6] If we were to hold otherwise, the imposition of a suspended sentence would be meaningless.

Other courts have concluded that probation is part of a plea agreement that provides for a suspended sentence. In *State v. Brooke,* 134 Idaho 807, 808, 10 P.3d 756, 757 (2000), the prosecutor agreed to recommend that Brooke be given a sentence of "a one-year fixed penitentiary sentence, zero indeterminate; suspended, give him credit for time served, and have him do a psychosexual eval prior to sentencing." At the sentencing hearing, the prosecutor "acknowledged the terms of the plea agreement and made a recommendation for a one-year determinate term, suspended, with credit for time [ ] served." *Id.,* 134 Idaho at 809, 10 P.3d at 758. The prosecutor noted concerns about Brooke's evaluation, and requested that the court place Brooke on "a highly supervised probation" and to require Brooke to participate in a sex offender treatment program. *Id.* The trial court sentenced Brooke to a twelve year sentence with a four-year determinate term. *Id.* Brooke complained, *inter alia,* that the prosecutor violated the plea agreement by recommending probation with sex offender treatment. *Id.* The Court of Appeals of Idaho disagreed, stating that "[a] recommendation for a suspended sentence implicitly contemplates probation." *Id.* The court noted that the statute authorizing a suspended sentence

> empowers a court to "suspend the execution of the judgment ... *and* place the defendant on probation under such terms and conditions as it deems necessary and expedient." The conjunctive "and" in this statute indicates that the suspension of a sentence is always to be accompanied by an order of probation. Moreover, it is inherent in the concept of a suspended sentence that the suspension can be revoked, and the sentence executed, if the defendant does not comply with conditions of the suspension. If the "suspension" were

---

**6.** Of course, the length and terms of probation are subject to the limitations imposed by statute and case law. *See* Md.Code (2001, 2006 Supp.), § 6–222(a) of the Criminal Procedure Article; *Douglas v. State,* 130 Md.App. 666, 674, 747 A.2d 752 (2000).

not revocable, it would not be a suspension but, rather, a commutation of the sentence.

*Id.,* 134 Idaho at 809–10, 10 P.3d at 758–59. (Emphasis in original). The Court concluded that "the prosecutor's request for probation was not a term that was inconsistent with, or even in addition to, the recommendation for a suspended sentence which was an express term of the plea agreement." *Id.*

In *State v. Winer,* 69 Conn.App. 738, 796 A.2d 491, *cert. denied,* 261 Conn. 909, 806 A.2d 50 (2002), the Appellate Court of Connecticut rejected Winer's contention that a sentence of eight years, with all but two years suspended, followed by five years of probation, exceeded the terms of his plea agreement. There, Winer had agreed to plead guilty in exchange for a maximum of two years' incarceration. *Winer,* 69 Conn.App. at 746, 796 A.2d at 497. The court noted that, at sentencing, Winer agreed to "an executed sentence of two years incarceration, plus a suspended sentence that could be as long as thirty years." *Id.,* 69 Conn.App. at 748, 796 A.2d at 497. The court further noted:

> While not required to serve a sentence when imposed, a suspended sentence contemplates the possibility that the defendant could be required to serve the sentence imposed at some later time. It is disingenuous for the defendant now to state that he thought that the maximum amount of time he could be incarcerated for was limited to two years when he specifically acknowledged that he could receive a suspended sentence of up to thirty years.

*Id.,* 69 Conn.App. at 748, 796 A.2d at 498. The court also opined that Winer's failure to object to the probation for a period of fourteen months made "clear that [Winer] contemplated a period of probation when he entered into his plea agreement." *Id.,* 69 Conn.App. at 753, 796 A.2d at 500.

*Gammarano v. United States,* 732 F.2d 273 (2nd Cir.1984), is also instructive. There, Gammarano had pled guilty pursuant to an agreement that his sentence not be longer than two years. *Id.* at 274. At the sentencing hearing, the trial judge

suspended the imposition of a sentence and placed Gammarano on probation for five years and imposed a fine. *Id.* at 275. Gammarano agreed in writing to conditions of probation extending five years. *Id.* He protested the length of the probation only after he had committed another offense. *Id.* The United States Court of Appeals for the Second Circuit concluded that the five-year period had not violated Gammarano's "reasonable expectation under the plea agreement," opining that "his inaction indicates that the probation term satisfied his expectations under the plea agreement." *Id.* at 276.

Here, too, appellant's conduct demonstrated both an understanding and an agreement to the imposition of a probationary period. As previously stated, appellant not only indicated to the court his understanding that he would be placed on probation, but failed to object to the probationary period or its conditions. More importantly, his over five years of inaction clearly shows that the sentence imposed met his reasonable expectations under the plea agreement. It is disingenuous for him to now claim, when his probation has been revoked, that he did not consider the probation to be a component of the agreement, and thus his suspended sentence of seventeen years was illegal.

The sentence imposed was in accordance with the plea agreement that appellant entered into. The trial court did not err in denying appellant's motion to correct an illegal sentence.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**